UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MAYUMI IIJIMA, *proposed Administrator for the
Estate of Ryo Oyamada, deceased,*

                              Plaintiff,                  **MEMORANDUM
AND ORDER**
- against -                                                 13 CV 2688 (ARR)

THE CITY OF NEW YORK, et al.,

                              Defendants.
----------------------------------------------------------------X

On May 3, 2013, Mayumi Iijima, plaintiff and Administrator of the Estate of Decedent Ryo Oyamada, filed a Complaint against the City of New York (the "City"), the New York City Police Department ("NYPD"), and Police Officer Darren Ilardi (collectively, "defendants"), alleging that Officer Ilardi, through acts of recklessness and gross negligence, caused the death of Ryo Oyamada, a pedestrian. (Compl.[1] ¶¶ 15-19). On August 29, 2014, plaintiff filed a letter motion to compel, detailing certain deficiencies in defendants' response to plaintiff's Second Request for Production. For the reasons set forth below, plaintiff's motion to compel is granted in part and denied in part.

## FACTUAL BACKGROUND

On February 21, 2013, Ryo Oyamada, a 24-year-old Japanese student was struck and killed on 40th Avenue in Queens by a marked NYPD vehicle, driven by Police Officer Darren

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed on May 3, 2013.

1

Ilardi. (Compl. ¶¶ 2, 14, 18-19; Am. Compl.[2] ¶ 1). In the original Complaint, plaintiff asserted causes of action against Ilardi for personal injury and wrongful death, based on negligence and recklessness, and a cause of action against the City for imputed vicarious liability based on the City's ownership of the NYPD vehicle. (Compl. ¶¶ 11-12, 14-17, 19-20). By Notice of Motion dated July 12, 2014, plaintiff moved for leave to file an amended complaint. By Order dated March 25, 2015, the Court granted plaintiff's motion to amend to add certain counts, but denied the motion insofar as it sought to add a Monell claim, claims of supervisory liability under Section 1983 and state law, and a claim of denial of access to the courts.

By letter dated August 29, 2014, plaintiff complains that defendants have failed to produce certain discovery which plaintiff believes will likely lead to the production of admissible evidence. (Pl.'s Ltr.[3] at 1). Defendants contend that the requests fall into four basic groupings and that: 1) defendants have already complied with or have agreed to comply with the first grouping; (2) the second grouping concerns new causes of action contained in plaintiff's proposed amended complaint for which defendants were awaiting the Court's ruling on the motion to amend before acting on these requests; (3) the third grouping contains requests that defendants have already partially complied with, but that defendants contend are overbroad and seek discovery beyond the scope of this lawsuit; and (4) the fourth grouping contains requests

---

[2]Citations to "Am. Compl." refer to plaintiff's proposed First Amended Complaint, attached as Exhibit 2 to the Notice of Motion for Leave to Amend Complaint, dated July 11, 2014.

[3]Citations to "Pl.'s Ltr." refer to plaintiff's letter outlining defendants' remaining obligation to respond to Plaintiff's Second Request for Production, dated August 29, 2014.

2

that are "palpably improper." (Defs.' Ltr.[4] at 1-2). Using the four categories identified by defendants, the Court addresses each group of requests in turn.

I. <u>Motion to Compel</u>

  A. <u>The First Grouping</u>

The first grouping consists of Requests 10, 15, and 17-22. Of this first grouping, plaintiff seeks to compel responses to Requests 15, 17, and 18.[5] Defendants state that they "agree[ ] to attempt to comply with, or ha[ve] already complied with" these requests. (Defs.' Ltr. at 1).

Request 15 seeks documents referencing or concerning video recordings depicting events within a two block radius of the crash location. (Pl.'s Ltr. at 9). Although defendants turned over video from surveillance cameras, plaintiff objects because the videos include "only tiny snippets" from the surveillance cameras, and plaintiff contends that the NYPD failed to collect any video recordings showing the collision or its immediate aftermath. (<u>Id.</u>) Plaintiff questions "why critical events were cut out at the end." (<u>Id.</u>) Defendants are Ordered to confirm that all documents and video recordings responsive to this request that are in their custody and control have been produced, and that the copies that have been provided are complete and the only copies available.

Request 17 seeks "any data or information contained in or extracted from any recording device that was incorporated into or contained within the vehicle Ilardi was operating at the time

---

[4]Citations to "Defs.' Ltr." refer to defendants' letter to the Court, dated October 10, 2014.

[5]Plaintiff states that she does not discuss Requests 10 and 19-22 in her letter motion because defendants indicated that they will conduct searches for documents responsive to those requests, and plaintiff reserves the right to object to the responses. (Pl.'s Ltr. at 11, n.5).

3

of the Crash." (Id. at 9-10). Defendants provided a paper printout from the event data recorder in Ilardi's report and have agreed with plaintiff's request to produce the data in its original digital format. (Id. at 10). However, plaintiff contends that defendants have not indicated whether they searched for any recordings from other devices in Ilardi's vehicle. (Id.) Accordingly, defendants are Ordered to produce the data in its original digital format, and confirm that the digital data from the event data recorder is all that defendants have responsive to this request.

Request 18 seeks Ilardi's cellular phone records or information regarding Ilardi's use of other portable electronic devices during a three hour window surrounding the time of the crash. (Id. at 10). This request was addressed at the October 2, 2014, status conference held before the undersigned. The Court directed defendants to provide Ilardi's cellular phone records for 30 minutes prior to and 30 minutes after the accident. Defendants have indicated that they will comply with the Court's directive and are thus, Ordered to do so.

B.  The Second Grouping

The second grouping includes Requests 5-9, 11, and 16, which involve causes of action that were the subject of plaintiff's motion to amend. Defendants indicated that they are awaiting the Court's ruling on the motion to amend before acting on these Requests but, in any event, they object to these requests because they are "vague, ambiguous, overbroad, not limited in time or scope, and seek[] information that is not material or reasonably calculated to lead to the discovery of admissible evidence." (Defs.' Ltr. at 1, 9-12, 14).

Now that the motion to amend has been decided, the parties are directed to meet and confer on these requests. Plaintiff is directed to narrow the scope of her requests in light of the

4

Court's ruling on the motion to amend, and clearly indicate what documents plaintiff is seeking. The Court notes that all of these requests as now phrased are overbroad and vague, and plaintiff needs to describe with greater specificity the nature or type of record sought. The requests should also be narrowed to materials relevant to the incident at hand, taking into account the Court's denial of certain claims in the motion to amend. If defendants continue to object to these narrowed requests and the parties cannot agree, defendants are directed to submit their objections in writing on or before **April 3, 2015**. Plaintiff will be given until **April 10, 2015** to respond. If the objections have been fully stated in the letters already submitted to this Court, counsel may simply refer to their earlier submissions.

### C. The Third Grouping

The third grouping includes Requests 1, 2, and 12-14. Defendants argue that they have already partially complied with these requests in previously exchanged discovery responses, but that the new requests are worded in a manner that are objectionably overbroad and stretch beyond the scope of this lawsuit. (Defs.' Mem. at 1).

#### 1. Request 1

Request 1 seeks "any document concerning or evidencing the presence or activities of any NYPD employee present within a two-block radius of the Crash location for the period of 00:30 through 02:45 on February 21, 2013, including without limitation any documents concerning or evidencing crowd control activities, crash investigation activities, and or the presence or activities of any Disorder Control Unit personnel." (Pl.'s Ltr. at 2). Plaintiff requests, at a

5

minimum, documents concerning: "(a) the 10-52/domestic disturbance call to which defendant Ilardi was assigned to respond at the time of the crash . . . (b) the 10-34/knife call two blocks from the Crash, to which defendant Ilardi claims he was responding when he struck decedent; (c) the 10-53/pedestrian struck call made by Ilardi and/or his partner after the Crash, including without limitation any assignment of personnel to control the crowd that gathered at the crash scene; (d) personnel assigned to investigate the Crash; (e) personnel assigned to investigate the origin of the 10/34 knife call." (Id.)

Plaintiff argues that Requests 1(a), 1(b), and 1(e) are relevant to the key issue in the case – whether Ilardi was engaged in an "emergency operation," at the time of the accident. Plaintiff contends that information "concerning the presence and activities" of officers other than Ilardi will shed light on the plausibility of Ilardi's claim that he was responding to the knife call at the time of the accident, and that he decided to ignore the domestic disturbance call. (Id. at 3). Plaintiff claims that the available evidence suggests that the officers who were actually assigned to the knife incident did not view it as an "emergency" even though Ilardi "sped dangerously through a densely populated area to respond." (Id.)

Plaintiff also argues that Request 1(c) is relevant because it is reasonably calculated to lead to the identification of eyewitnesses, and that if the Court grants plaintiff's motion to amend to add a denial of access to the courts claim, then these documents are also relevant to the dispersal orders and methods that resulted in the absence of eyewitnesses. (Id. at 2-3). Finally, plaintiff contends that Request 1(d) and the activity logs, emails, and other notes created by the crash investigators are reasonably calculated to lead to the discovery of admissible evidence. (Id. at 2).

6

Defendants argue that they have already produced responsive documents pertaining to "the extensive investigation performed by the NYPD regarding the motor vehicle accident in question," such as the Accident/Collision Investigation Squad's file and the worksheets from the Internal Affair Bureau's file. (Defs.' Ltr. at 5). However, they object to Request 1 to the extent that plaintiff is "improperly broadening the scope of discovery to cover the emergency call to which Officer Ilardi was responding." (Id.) Defendants cite to the decision in Criscione v. City of New York, 97 N.Y.2d 152, 762 N.E.2d 342, 736 N.Y.S.2d 656 (2001), where the New York Court of Appeals held that "[g]iven the legislative determination that a police dispatch call is an 'emergency operation,' it is irrelevant whether the officers believed that the . . . call was an emergency." 97 N.Y.2d at 158, 762 N.E.2d at 345, 736 N.Y.S.2d at 659. In Criscione, a police officer was involved in a car accident while responding to a dispatch call to investigate a family dispute. 97 N.Y.2d at 154-55, 762 N.E.2d at 343, 736 N.Y.S.2d at 657. Even though the defendant driver and the recorder officer in the vehicle testified that they did not consider the call to be an emergency run, the New York Court of Appeals held that, because Vehicle and Traffic Law § 114-b states that a police officer in an authorized emergency vehicle is engaged in an 'emergency operation' "when such vehicle is . . . responding to . . . [a] police call," the police officer was involved in an 'emergency operation' as a matter of law. 97 N.Y.2d at 157-58, 762 N.E.2d at 345, 736 N.Y.S.2d at 659. Therefore, the Court of Appeals determined that, pursuant to Vehicle and Traffic Law § 1104, the jury should have been instructed that a driver of an authorized emergency vehicle is granted "a qualified privilege to disregard the ordinary rules of prudent and responsible driving, subject to a 'reckless disregard' standard of liability." 97 N.Y.2d at 158, 762 N.E.2d at 345, 736 N.Y.S.2d at 659. Based on this decision, defendants

argue that "it is irrelevant and undiscoverable whether or not Officer Ilardi *or any other officer on duty that night*, believed that the 'man with a knife' radio call was a true emergency or not." (Defs.' Ltr. at at 6) (emphasis in original).

Having considered the parties' arguments, the Court finds that with respect to the plaintiff's request for all documents "concerning or evidencing" the knife call, the domestic disturbance call, and "personnel assigned to investigate the origin of the 10/34 knife call," the requests are vague and overbroad in that they are virtually unlimited in the scope of the types of documents they seek. The request for documents concerning the knife call is not limited to the identity of the officers called to the scene, which would arguably provide the information plaintiff seeks even if it was relevant. Indeed, the request is not limited in any way and potentially seeks information about individuals, other than police officers, who may have been involved in the underlying knife incident, including documents as to victims of the knife call, possible arrest charges, pleas taken, trial papers, etc., that are wholly unrelated to the issue that plaintiff claims she is seeking to prove. Similarly, the request for all documents relating to the 10-52 domestic disturbance call is equally unlimited in scope, and since defendant Ilardi did not respond to that call, it is unclear what relevance information about the victims or even the officers involved in that call would have to the issues in this case.

Finally, the request for "any document concerning or evidencing . . . personnel assigned to investigate the . . . knife call," is so vague as to be incomprehensible. If plaintiff seeks the identities of the other officers who were assigned to respond to or investigate the knife incident, in order to depose them, then the request should so state. If she seeks their memo books or reports relating to the incident, then she should specify what she is looking for. As currently

8

drafted, the request for documents responsive to Request 1(e) arguably calls for production of any record relating to any officer assigned to that knife call, including that officer's health records, pension records, service applications, etc. Accordingly, the Court denies the motion to compel as to these categories of documents – Requests 1(a), (b), and (e) – because the requests are not only vague and ambiguous but clearly overbroad and not likely to lead to the discovery of any relevant evidence.

Moreover, even if plaintiff were able to limit these requests in some manner, to seek information solely related to the other officers who responded to the knife call or the domestic dispute and their conduct in connection with the investigations conducted that night, the Court agrees with defendants' analysis of Criscione and finds that these other officers' opinions as to whether the knife call was an emergency or not are irrelevant as a matter of law, given the Court of Appeals' interpretation of the Vehicle and Traffic Law provision. Thus, the Court finds no basis upon which to order defendants to produce these records.

With respect to Requests 1(c) and 1(d) seeking any document concerning "personnel assigned to investigate the Crash" and "the 10-53/pedestrian struck call . . . including without limitation any assignment of personnel to control the crowd that gathered at the crash scene," defendants argue that counsel's assertion that officers either negligently or intentionally failed to interview people at the scene and appropriately conduct an investigation is without merit because "[t]he caselaw makes it quite clear that there is no cause of action for a negligent or insufficient police investigation." (Id. at 7) (citing Medina v. City of New York, 102 A.D.3d 101, 953 N.Y.S.2d 43 (1st Dep't 2012); Coyne v. State, 120 A.D.2d 769, 501 N.Y.S.2d 769 (3d Dep't 1986)).

9

While defendants are correct that there is no basis for a claim of negligence based on an officer's failure to conduct an adequate investigation, plaintiff's request for the identities of other officers on the scene, regardless of whether they were investigating the plaintiff's accident or there for purposes of crowd control, may in fact lead to the discovery of admissible evidence. Plaintiff alleges that there were civilian eyewitnesses to the accident, but that the defendants dispersed the crowd without obtaining any of the witnesses' identification. It is unclear from defendants' response whether they have contacted these other officers who may not have been assigned to investigate the accident, but were at the scene to control the crowd to determine if they made notes in their memo books or elsewhere as to any potential witnesses to the accident.

Defendants are Ordered to provide, if they have not already done so, the identities of any police officers on the scene at the time of the accident or shortly thereafter, and indicate whether these officers have been directed to produce any records or notes reflecting the identities of witnesses to the accident. However, to the extent that plaintiff seeks other documents from these witnesses, plaintiff is directed to more specifically describe the documents sought. The Requests as now framed are vague and ambiguous.

2. <u>Request 2</u>

Request 2 seeks "any document concerning or evidencing the whereabouts, assignment and/or activities of the following NYPD personnel during the period of 23:45 on February 20 through 02:45 on February 21, 3013: [Officer] Ilardi; Jason Carman (Shield #28065); Sgt. f/n/u Fletcher (Shield #991); P.O. Smith Dorsaint (command as of 2/21/13, #809); Sgt. f/n/u Hacklin Ng (command as of 2/21/13, #809; P.O. f/n/u Anthony Coppola (command as of 2/21/13; #809);

P.O. Brito (Shield #4613)." (Pl.'s Ltr. at 3-4).

Plaintiff seeks these documents for several reasons. First, plaintiff argues that the whereabouts of the other five officers at the time of the crash are relevant because, if they were closer to the knife call than Ilardi, then "Ilardi's purported decision to redirect to the knife call is less plausible." (Id. at 4). Plaintiff argues that an unidentified officer stated on the police radio that he was a "block out," presumably from the knife call, shortly before the crash, and plaintiff believes that Sergeant Fletcher and Officer Dorsaint were responsible for this radio call. (Id.) Accordingly, plaintiff argues that documents showing the officers' whereabouts will shed light on whether it was Fletcher or Dorsaint, "rather than Ilardi/Carman, who claimed seconds before the crash that they were a 'block out' from the knife call." (Id.)

Request 2 also seeks documents regarding Ilardi and Carmen's whereabouts during the three-hour time before the accident, and plaintiff argues that these documents would shed light on whether or not Ilardi and Carmen were heading towards the knife call at the time of the accident. (Id.)

Defendants state that they have already turned over the memo book entries for Darren Ilardi and Jason Carman, and they reiterate the objections stated in response to Request 1 in opposing Request 2. Specifically, they state that "[t]he actions of other officers that may have come either to the scene of the accident or to the '10–34 call' are completely irrelevant and are not material or necessary to the instant lawsuit." (Defs.' Ltr. at 7-8).

In light of the Criscione decision discussed above, the only relevant issue is whether Officer Ilardi was responding to *any* police call at the time of the accident and thus, engaged in an emergency operation, irrespective of whether it was the knife call or domestic disturbance

11

call. The identity of the speaker on the radio call minutes before the crash may be relevant to this issue. Thus, although the Court finds no basis to order production of the whereabouts of Sergeant Hacklin Ng, Officer Anthony Coppola, or Officer Brito for a 3-hour period prior to the accident, the Court finds that the memo books reflecting the activities of Fletcher or Dorsaint may shed light on who made the radio response. However, the request is limited to the half hour period prior to the knife call.

Plaintiff further argues that documents concerning Officers Ilardi's and Carman's location and activities, including hospital documents and statements, are relevant to demonstrate that Ilardi and Carman had an opportunity to "coordinate accounts of the Crash, or statements they may have made about the Crash." (Id. at 4-5). Finally, plaintiff argues that, if the Court grant's plaintiff's motion to amend to add a denial of access to the courts claim, then the activities of these officers is relevant to the crowd dispersal methods that were used and the crash investigation. (Id. at 5).

To the extent that defendants have already disclosed Ilardi's and Carman's memo books, it is unclear what additional information plaintiff seeks and why what the officers were doing an hour before the accident will demonstrate whether Ilardi's destination was the knife call. Similarly, it is unclear what "hospital records and statements" plaintiff is referring to and why, if the officers were treated for injuries, their statements to their doctors would demonstrate that they had time to coordinate their statements. If plaintiff seeks records demonstrating that the two officers were taken to the hospital in the same ambulance, defendants are directed to produce that ambulance call report or any other records generated that would show how the officers got to the hospital. As for hospital or treatment records for the officers, the Court Orders that those be

12

produced for *in camera* inspection. If there is no mention by either officer as to how the crash occurred, the records will not be produced.

### 3. Requests 12 and 13

Requests 12 and 13 seek "any document referencing Ryo Oyamada," and "any document referencing the Crash," respectively. (Pl.'s Ltr. at 8). These requests are limited to the period of February 21, 2010 through the present. (Id. at 1). Plaintiff argues that because Ryo Oyamada had no known contact with the NYPD other than this incident, documents referencing him or the accident are presumptively relevant. (Id. at 8). Plaintiff also contends that defendants have not fulfilled their discovery obligations until they conduct a reasonably diligent search for responsive documents kept by the following individuals, units, and divisions: (1) Chief Tuller, Transportation Bureau Chief; (2) DI Iglesias, Commanding Officer of PSA 9 (Ilardi's command); (3) Captain Mark Wachter, Executive Officer of the 114th Precinct; (4) Sergeant Aaron Lai, NYPD Police Academy; (5) Lieutenant Luis Perez, Driver Education and Safety Unit; and (6) Captain Tarantolo, Patrol Borough Queens North. (Id. at 8-9).

Defendants argue that they have already turned over the Accident Investigation Squad file, Internal Affairs documents, and other police documents regarding this incident, and have thus complied with this demand. (Defs.' Ltr. at 12). Defendants also state that there is no way to conduct a search for "any document" referencing "any single human being." (Id.) With respect to Request 12, defendants contend that most of the specific individuals listed by plaintiff, especially those from the police academy, Transportation Bureau, and Driver Education and Safety Unit, have no connection to the motor vehicle accident. (Id.)

13

Given that defendants state that they have turned over documents responsive to this request, defendants are Ordered to provide a statement to plaintiff stating that they have conferred with these named individuals and that these individuals do not have any additional documents referring to Ryo Oyamada or the relevant incident. If defendants should find any documents referencing Ryo Oyamada or the relevant incident, defendants are directed to produce them to plaintiff.

4. Request 14

Request 14 seeks "any document referencing or concerning skid marks left by the vehicle that struck Ryo Oyamada." (Pl.'s Ltr. at 9). This request is limited to the period of February 21, 2010 through the present. (Id. at 1). Plaintiff argues that skid marks at the scene would be relevant to negligence and recklessness, and that although the NYPD regularly uses skid mark measurements to estimate the speed of a vehicle, those measurements were not taken in the instant case even though an "earwitness" heard tires screeching. (Id.) Defendants contend that they have already produced the Accident Investigation Squad file, Internal Affairs documents, and other police documents regarding this incident, and that they have, thus, complied with this demand. (Defs.' Ltr. at 13). They further contend that there is no way to conduct a search for "any document referencing" an event. (Id.)

Defendants are directed to confirm that they have searched for and produced all documents referring to skid marks left by the vehicle that struck Ryo Oyamada. If defendants should find any additional documents referencing skid marks at the scene of this accident, they are directed to produce them to plaintiff.

14

### D. The Fourth Grouping – Requests 3 and 4

Request 3 seeks documents concerning the "location, assignment, use, custody or operation of" four listed NYPD vehicles, which responded to the scene of the accident, or the other 10/34 radio call. (Pl.'s Ltr. at 5). Plaintiff seeks this information apparently to support her argument that there were other officers in the vicinity of the knife call who could have responded instead of Ilardi, and that Ilardi's intended destination at the time of the accident was not the knife call. (Id.) Request 4 seeks "any document concerning the assignment, use or custody of any NYPD-owned vehicle" operated "on 40th Avenue between Vernon Boulevard and 12th Street." Plaintiff seeks this information because surveillance videos turned over by defendants show four different patrol cars in the vicinity of the accident, but plaintiff is unable to confirm which videos depict Ilardi's vehicle. (Id.) Plaintiff alleges that she is willing to narrow this request to vehicles assigned to the 114th Precinct or PSA 9, but that defendants have refused to respond to the narrowed request. (Id. at 6).

Again, these requests are overly broad in asking for "any document," without limitation as to type of document and without specifying the information sought with respect to these vehicles. Even if defined with more specificity, plaintiff has failed to show how the locations of these other vehicles could possibly be relevant or lead to the discovery of admissible evidence. Thus, the Court denies the motion to compel as to Requests 3 and 4. However, to the extent that what plaintiff seeks is a way to identify Ilardi's vehicle in the videos, defendants are Ordered to provide whatever identifying information they may have to assist in this process.

## CONCLUSION

In conclusion, plaintiff's motion to compel is granted in part and denied in part.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**
Dated: Brooklyn, New York
March 25, 2015

/s/ · CHERYL POLLAK
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York